2008-NMCA-028

178 P.3d 828

**BOARD of COUNTY COMMISSIONERS of the County of BERNALILLO, Plaintiff–Appellant,**

v.

**Martin J. CHAVEZ, in his capacity as Mayor of the City of Albuquerque, and Albuquerque City Council, as the Governing Body of the City of Albuquerque, Defendants–Appellees.**

No. 26,800.

Court of Appeals of New Mexico.

Dec. 3, 2007.

Certiorari Denied, No., 30,888, Feb. 19, 2008.

Jeffrey S. Landers, Bernalillo County Attorney, Peter S. Auh, Assistant County Attorney, Patrick F. Trujillo, Deputy County Attorney, Albuquerque, NM, for Appellant.

Robert M. White, City Attorney, Paula I. Forney, Assistant City Attorney, Mark Shoesmith, Assistant City, Attorney Albuquerque, NM, for Appellees.

New Mexico Municipal League, Inc., Randall D. Van Vleck, Santa Fe, NM, for Amicus Curiae.

New Mexico Association of Counties, Noeding & Jarrett, Danny W. Jarrett, James L. Cook, Albuquerque, NM, for Amicus Curiae.

## OPINION

VIGIL, Judge.

{1} This case requires us to decide whether a Joint Powers Agreement (the JPA) between the County of Bernalillo (the County) and the City of Albuquerque (the City) for the operation of the Metropolitan Detention Center (the MDC) was properly terminated by the City. The district court determined that it was, granting the City's motion for summary judgment. The County appeals, making two arguments: (1) that the district court erred in ruling that Mayor Martin Chavez (the Mayor) of the City had the power to unilaterally terminate the JPA; and (2) that the JPA may only be terminated by a party and the Mayor is not a party to the JPA. Although we rely on reasons different from those articulated by the district court, we hold that the City properly terminated the JPA, and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} In 2002, the City and the County entered into the JPA for the operation of the MDC. The JPA provided for the creation of the Albuquerque Bernalillo County Government Commission (the ABCGC) to govern all MDC policy matters and budget differences. The ABCGC is comprised of the Mayor, one City Councillor, two County Commissioners, the City's Chief Administrative Officer, the County Manager, the County Comptroller, and the Director of Council Services. Paragraph 4 of the JPA is entitled "**Term and Termination**," and in pertinent part states:

4. **Term and Termination.** This Agreement shall commence on the date last entered below and may be terminated by either the County or the City giving the other entity notice of at least twelve months in advance of the end of the fiscal year in which the Agreement is to be terminated. In the event of termination of this Agreement, distribution of the properties owned by either the County or the City shall be determined by agreement of the parties.

In the event that voters fail to adopt a charter for a single urban government pursuant to Article X, Section 11 of the Constitution of the State of New Mexico the management of the MDC shall be transferred from the City to the County within a reasonable time as determined by the ABCGC and all other provisions of this Agreement shall remain in full force and effect.

{3} On April 18, 2005, the Mayor gave notice to the County that the City was terminating the JPA effective June 30, 2006. The notice was addressed to the County Manager, and a copy was sent to the President of the City Council and four ABCGC members. The notice reads:

April 18, 2005

Thaddeus Lucero, [County Manager of Bernalillo County and his Address]

SUBJECT: Notice of Termination of Joint Powers Agreement for the Metropolitan Detention Center

HAND DELIVERED

Dear Mr. Lucero:

Pursuant to Paragraph 4 of the Joint Powers Agreement [b]etween the County of Bernalillo and the City of Albuquerque for the Joint Metropolitan Detention Center (the Agreement), the City of Albuquerque hereby gives notice of its intent to terminate the Agreement. The termination provision of the Agreement provides that notice be given "at least twelve months in advance of the end of the fiscal [year] in which the Agreement is to be terminated." As such, the termination will become effective June 30, 2006.

The City will continue to operate the Metropolitan Detention Center until that date unless the Albuquerque Bernalillo County Government Commission determines that the transition of operations to the County should occur earlier.

Thank you for your attention to this matter.

Sincerely,

[signature]

Martin J. Chavez

cc: [President of Albuquerque City Council Four Members of ABCGC]

{4} On February 1, 2006, the County filed a complaint for declaratory judgment, requesting the district court render judgment that the Mayor did not have unilateral authority to terminate the JPA absent approval and authorization from the Albuquerque City Council and, therefore, the Mayor's letter of April 18, 2005, had no legal effect. The complaint asserted, "To date, Defendant Albuquerque City Council has not weighed in on the issue at controversy."

{5} On February 10, 2006, the County filed a motion for summary judgment, arguing that there were no genuine issues of material fact, and that, as a matter of law, under State law, the City Charter, and the JPA, the City Council, not the Mayor, has the authority to enter into a JPA, approve amendments and modifications to it, and terminate it. In support of its motion for summary judgment, the County attached the affidavit of County Manager Thaddeus Lucero. The affidavit states that by letter dated April 18, 2005, addressed and received by Mr. Lucero, the Mayor in-

formed the County that the City was giving notice of its intent to terminate the JPA. The affidavit adds that between July 1, 2004, and the date of filing of the complaint (February 1, 2006), "the City Council took no action to terminate the JPA, and further, has taken no action to authorize the termination of the JPA."

{6} On February 22, 2006, the City Council met and approved Resolution 06–32 (R–06–32). R–06–32 in its entirety states:

## RESOLUTION

REGARDING THE TRANSFER OF THE OPERATION AND ADMINISTRATION OF THE METROPOLITAN DETENTION CENTER FROM THE CITY TO THE COUNTY OF BERNALILLO.

WHEREAS, the [MDC], which is owned by [the County], is currently operated by [the City] pursuant to [the JPA] between the two governing bodies; and

WHEREAS, the [ABCGC], which governs all MDC policy matters in accordance with the JPA, directed the City and County to enter into a contract with Voorhis/Robertson Justice Services, Inc. ("Consultant") to conduct an operational, financial and legal analysis for the ownership and operation of the MDC; and

WHEREAS, the Consultant analyzed four management options and made recommendations to the ABCGC for future management of the MDC; and

WHEREAS, the Consultant recommended, among other things, that the owner and manager of the MDC should be the same, and stated that the County is the likely manager of the MDC; and

WHEREAS, the ABCGC received the Consultant's recommendations at its meeting on November 1, 2005 and recommended to the City Council and the Board of County Commissioners that each governing body entertain a resolution to transfer the operation and administration of the MDC to the County; and

WHEREAS, the Board of County Commissioners adopted Resolution No. 91–2005 on November 8, 2005[,] which stated that a transition team will be established immedi-ately to begin the transition of the MDC operation and management from [the City] to [the County]; and

**WHEREAS, the Council supports the recommendation of the Consultant to transfer the operation of the MDC from the City to the County and the termination of the JPA;** and

WHEREAS, the Council supports the City and County governing bodies and respective staffs working together and cooperating to effect a smooth transition of the operation of the MDC from the City to the County; and

WHEREAS, the Council desires to protect the MDC employees and to take measures to ensure that the MDC employees' concerns will be addressed during the transition period; and

WHEREAS, the Council desires to reach an equitable agreement with the Board of County Commissioners for the funding of the MDC during the transition period and after the operation has been transferred to the County.

BE IT RESOLVED BY THE COUNCIL, THE GOVERNING BODY OF THE CITY OF ALBUQUERQUE:

**Section 1. The City should proceed with the necessary steps to transfer the operation and administration of the [MDC] to the County by July 1, 2006, and the City Administration should work cooperatively with County officials and staff to accomplish the transition.**

(Emphasis added.)

{7} The City responded to the County's motion for summary judgment and filed its own motion for summary judgment on February 27, 2006, on several grounds. Pertinent to our consideration, the City contended that it was entitled to judgment as a matter of law, because "[t]he JPA was validly terminated." Among other arguments, the City contended that on February 22, 2006, in R–06–32, the City Council "acted to ratify the [M]ayor's termination of the JPA." In support of its position, the City attached the affidavit of Laura Mason, Director of Council Services for the City. The affidavit states simply that the City Council passed R–06–32

and a copy of R–06–32 is attached to it and incorporated by reference. The County did not dispute that the City Council passed R–06–32 on February 22, 2006, nor did it dispute that R–06–32 reads as set forth in the attachment to Ms. Mason's affidavit.

{8} The County moved to strike Ms. Mason's affidavit. The district court did not rule on the motion to strike, since the district court first granted summary judgment to the City and dismissed the County's complaint with prejudice. To the extent the County's motion to strike Ms. Mason's affidavit remained unresolved below and we rely on the affidavit here, we can find no legal basis for striking the affidavit to the extent that it supports the basic material facts that R–06–32 was passed by the City Council on February 22, 2006, and that it reads as attached to Ms. Mason's affidavit.

{9} The County disputed that R–06–32 was a ratification of the Mayor's termination of the JPA. The County argued that there is no mention in the recitations of the Mayor's termination, and the text of the resolution does not purport to terminate the JPA. The County asserted that the language of R–06–32, New Mexico cases, and case law from other jurisdictions supported its position. The County further argued that, at best, R–06–32 was an attempt to invoke the second paragraph of the termination section, Paragraph 4 of the JPA, quoted above, providing for transfers of the management of the MDC from the City to the County within a reasonable time by the ABCGC, should the voters vote against a unified urban government between the County and the City. The County argued that there were disputed facts which otherwise precluded summary judgment in favor of the City. None of these disputed facts, or the affidavits submitted in opposition to the City's motion for summary judgment, however, are material to the ratification issue.

{10} A hearing was held before the district court where the parties argued their respective positions. Following the hearing, the district court determined that R–06–32 did not either ratify or repudiate the Mayor's termination of the JPA. Nevertheless, the district court concluded that the JPA's

termination provision, as opposed to other provisions of the JPA, does not require approval of the City Council; that the Mayor had the power to terminate the JPA; and that "[a]ll parties acted as if the [JPA] had been terminated pursuant to the Mayor's letter of April 18, 2005[,] and that it was a valid termination." Accordingly, the district court denied the County's motion for summary judgment and granted the City's motion for summary judgment. The County appeals.

## STANDARD OF REVIEW

{11} Our standard of review is well settled. "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). This Court "view[s] the facts in a light most favorable to the party opposing the motion and draw[s] all reasonable inferences in support of a trial on the merits." *Handmaker v. Henney*, 1999–NMSC–043, ¶ 18, 128 N.M. 328, 992 P.2d 879. However, when the material facts are not in dispute, and we are presented with a question of law arising out of the undisputed facts, our review is de novo. *See Whittington v. State Dep't of Pub. Safety*, 2004–NMCA–124, ¶ 5, 136 N.M. 503, 100 P.3d 209 (stating that when the material facts are not in dispute, review of summary judgment order is de novo).

{12} It is also well established that, an appellate court "will affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant." *Maralex Res., Inc. v. Gilbreath*, 2003–NMSC–023, ¶ 13, 134 N.M. 308, 76 P.3d 626 (quoting *Moffat v. Branch*, 2002–NMCA–067, ¶ 13, 132 N.M. 412, 49 P.3d 673); *accord Sam v. Sam*, 2006–NMSC–022, ¶ 11, 139 N.M. 474, 134 P.3d 761; *Piano v. Premier Distrib. Co.*, 2005–NMCA–018, ¶ 17, 137 N.M. 57, 107 P.3d 11. Moreover, the reviewing court is not limited to the district court's reasoning in affirming a grant of summary judgment. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 528 (10th Cir.1994); *see Miller v. Auto. Club of N.M., Inc.*, 420 F.3d 1098, 1131 (10th Cir.2005).

{13} In the briefing and oral argument before the district court, the parties fully argued the issue of ratification, and the district court gave a ruling on the issue. As such, the record contains an adequate and independent basis for determining that the City Council ratified the Mayor's termination of the JPA based on undisputed material facts as a matter of law, and making this legal determination is not unfair to the County.

## DISCUSSION

{14} We do not address the issue of whether the Mayor had authority to terminate the JPA. Rather, we conclude that the City Council ratified the Mayor's termination of the JPA. The County contends that R–06–32 was not passed to ratify the Mayor's termination letter. The County makes two arguments in this regard: (1) because the City did not appeal the district court's decision as to ratification, the City should be precluded from raising the issue here, and (2) if our Court does consider it, the district court's interpretation of R–06–32 should be affirmed. As we have stated, the issue of ratification was fully briefed and argued at the district court level. At the hearing before the district court, the County agreed that there was no dispute about the existence of the resolution, rather the dispute turned on the meaning of the language in the resolution. The district court reviewed the language of R–06–32 and stated the following:

> I'm just saying [R–06–32] does not appear to me to repudiate, nor does it appear to me to be express ratification of [the Mayor's termination]. It is what it is. And it appears to be, if that's relevant to you, an acknowledgment of this process and the resolution encouraging mutual agreement and working toward a positive resolution of this transfer.

We disagree with the district court's evaluation of the language in R–06–32.

{15} *Armijo v. Nuchols,* 57 N.M. 30, 253 P.2d 317 (1953), is an early New Mexico decision examining the elements of ratification. *See Romero v. Bank of the Sw.,* 2003–NMCA–124, ¶ 16, 135 N.M. 1, 83 P.3d 288. The Court in *Armijo* held that "the plaintiff, with full knowledge of the facts entitling him to rescind a voidable contract, ratified the contract, without fraud or duress, by expressly and implicitly confirming the contract in a supplemental agreement and by waiting a month to rescind it." *Romero,* 2003–NMCA–124, ¶ 16, 135 N.M. 1, 83 P.3d 288 (citing *Armijo,* 57 N.M. at 35–36, 253 P.2d at 320–21). "Ratification is the adoption or confirmation by a principal of an unauthorized act performed on its behalf by an agent." *Johnson & Johnson v. Taxation & Revenue Dep't,* 1997–NMCA–030, ¶ 16, 123 N.M. 190, 936 P.2d 872 (internal quotation marks and citation omitted). It is the burden of the entity asserting ratification to show that the voidable act was saved by ratification. *See Romero,* 2003–NMCA–124, ¶ 18, 135 N.M. 1, 83 P.3d 288. Ratification can be implicit and it can be inferred from the failure to repudiate the voidable act. *See, e.g., Bank of Santa Fe v. Honey Boy Haven, Inc.,* 106 N.M. 584, 587, 746 P.2d 1116, 1119 (1987) (stating that, "[r]atification of the action of a corporate officer for which antecedent authority might not have existed may be either express or implied, and may arise through the corporation's acquiescence in or recognition of its officer's unauthorized act, or by actions of the corporation representing an acceptance or adoption of the unauthorized act"); *see also Grandi v. LeSage,* 74 N.M. 799, 810, 399 P.2d 285 (1965) ("The substance of the doctrine [of ratification] is confirmation after conduct, amounting to a substitute for prior authority. The ratification by the principal of an unauthorized act of his agent is equivalent to an original grant of authority. Upon acquiring knowledge of the agent's unauthorized act, the principal should promptly repudiate the act. Otherwise, it will be presumed he has ratified and affirmed it.") (internal quotation marks and citation omitted); *see also, e.g., In re Estate of Duran,* 2003–NMSC–008, ¶ 15, 133 N.M. 553, 66 P.3d 326 (discussing that generally a minor "may ratify the contract in two ways, either by affirmative act, or failure to disaffirm within a reasonable time"); *Terrel v. Duke City Lumber Co.,* 86 N.M. 405, 420, 524 P.2d 1021, 1036 (Ct.App. 1974) ("A person may ratify an agreement. Ratification occurs if, knowing the terms and conditions of the agreement the person acts

pursuant to the agreement, and accepts the benefits of the agreement for a considerable length of time after he has had the opportunity to avoid or repudiate."), *aff'd in part, rev'd in part by* 88 N.M. 299, 540 P.2d 229 (1975).

{16} No doubt, as the County contends, R–06–32 was enacted for many reasons, including, as the district court stated, for the purpose of acknowledging the City's desire to work amicably with the County to effectuate the transfer of the MDC to the County. We need not explore all of the political and other reasons that the City may have had when it passed R–06–32, because these reasons do not create material issues of fact about whether the City Council ratified the Mayor's termination of the JPA under the undisputed material facts and the plain language of R–06–32. Thus, the fact that the City Council may have passed R–06–32 to respond to many events, as the County argues, is immaterial, and we decline to order a trial to dissect them.

{17} It is undisputed that the City Council passed R–06–32 on February 22, 2006, and it is undisputed that R–06–32 reads as quoted above. In its response to the City's motion, the County's affidavits do not dispute that the City Council passed R–06–32 on February 22, 2006, nor do they dispute that R–06–32 reads as set forth in the attachment to Ms. Mason's affidavit.

{18} However, the County generally suggests that an issue of material fact exists as to what the City Council knew at the time that R–06–32 was passed. We are not persuaded. The County's own statement of disputed facts and its affidavits do not dispute that the City Council and the County knew about the Mayor's letter terminating the JPA on behalf of the City on or about April 18, 2005. On its face, the letter is addressed to the County Manager and it states that copies were sent to the President of the City Council, and the County and City members of the ABCGC. The County's affidavits do not contend that the County Manager, President of the City Council, or the City and County members of the ABCGC did not receive the letter or did not know about its contents. Indeed, the letter and its contents were a matter of public discussion in the press. The County's own motion for summary judgment and the affidavit of the County Manager, which were filed before the City passed R–06–32, state that the City Council had taken no position on the validity of the Mayor's termination letter, and the County's responding affidavits do not dispute that when the City Council passed R–06–32, on February 22, 2006, the City Council knew that the County's complaint had already been filed. Finally, it is undisputed that the City Council knew that the County and the City were involved in litigation concerning the authority of the Mayor to terminate the JPA when it passed R–06–32 on February 22, 2006.

{19} The district court's ruling and the County's arguments focus on the language in R–06–32 that expresses the City's desire to work amicably with the County to effectuate the transfer of the MDC from the City to the County. While this language is certainly present and its conciliatory intent is clear, we are asked to overlook the unambiguous, additional language of R–06–32. This language clearly and unequivocally states that the City supports (1) the recommendation of the consultant to transfer the operation of the MDC from the City to the County, *and* (2) termination of the JPA. R–06–32 then states that the transfer is to be completed by July 1, 2006.

> WHEREAS, the Council supports the *recommendation of the Consultant to transfer the operation of the MDC from the City to the County* **and the termination of the JPA**[.]
>
> . . . .
>
> BE IT RESOLVED BY THE COUNCIL, THE GOVERNING BODY OF THE CITY OF ALBUQUERQUE:
>
> Section 1. **The City should proceed with the necessary steps to transfer the operation and administration of the [MDC] to the County by July 1, 2006,** and the City Administration should work cooperatively with County officials and staff to accomplish the transition.

(Emphasis added.) Stating its support for the termination of the JPA and resolving that the City proceed to transfer the operation and administration of the MDC to the

County by July 1, 2006, reflect the City's approval of, its support for, and its ratification of, the Mayor's termination letter. The Mayor's termination letter stated that "*the City of Albuquerque* hereby gives notice of its intent *to terminate* the Agreement . . . . *effective June 30, 2006.*" (Emphasis added.) The County's response to the City's motion for summary judgment, including the County's affidavits, as well as the district court's ruling, focused on the many possible purposes for passing R–06–32, the lack of the word "ratify" in the resolution, and on disputes over other facts immaterial to ratification. As such, the County and the district court overlooked the City's failure to repudiate the Mayor's letter and the presence of express language in R–06–32 stating that the City supported the termination of the JPA, with the transfer of the MDC to be completed by July 1, 2006.

{20} There can be no doubt that the City wanted to express conciliation toward the County in working out the details of the transfer of the MDC from the City to the County. Equally, however, there can be no doubt that the City approved the termination of the JPA and the transfer of the MDC to the County, in R–06–32, with the transfer to be completed by July 1, 2006. This constituted a ratification of the Mayor's termination letter. The County's response to the City's cross-motion and its affidavits do not dispute these material facts and the plain words of R–06–32.

{21} We hold that the County does not raise material issues of fact with regard to the City's motion for summary judgment on the grounds of ratification. Therefore, the City is entitled to summary judgment on this issue. In light of our disposition, we decline to address the other issues raised by the parties.

**CONCLUSION**

{22} We affirm the district court's decision to affirm the termination of the JPA on the alternative basis that the City Council ratified the Mayor's letter terminating the JPA and transferring the MDC operation to the County by July 1, 2006.

{23} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and CELIA FOY CASTILLO, Judge.