**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-076

Filing Date: June 12, 2012

Docket Nos. 31,156 & 30,862 (consolidated)

LA MESA RACETRACK & CASINO,
RACETRACK GAMING OPERATOR'S
LICENSE NO. R-009,

      Petitioner-Appellant,

v.

STATE OF NEW MEXICO
GAMING CONTROL BOARD,

      Respondent-Appellee.

APPEAL FROM THE NEW MEXICO GAMING CONTROL BOARD
M. David Chacon, Hearing Officer

Bregman & Loman, P.C.
Sam Bregman
Eric Loman
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Santa Fe, NM
Frank A. Baca, Special Assistant Attorney General
Peggy A. Hardwick, Special Assistant Attorney General
Albuquerque, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

1

**{1}** The New Mexico Gaming Control Board (Board) ruled that a gaming license it issued to La Mesa Racetrack and Casino, L.P. (La Mesa) was rendered void by statute when La Mesa failed to conduct any live horse races during the 2010 meet pursuant to a license issued by the New Mexico Racing Commission (Racing Commission) to conduct such races. La Mesa appeals the Board's ruling in two separate appeals, which we have consolidated. For the reasons stated herein, we affirm.

## I. BACKGROUND

**{2}** La Mesa appeals from two final orders issued by the Board pursuant to NMSA 1978, Section 60-2E-60(A) (2002) (providing that any person adversely affected by an action taken by the Board after its review pursuant to NMSA 1978, Section 60-2E-59(A) (2002) may appeal to the court of appeals).

**{3}** On January 22, 2009, the Racing Commission granted La Mesa a license (racing license) to conduct live horse races in Raton, New Mexico for the 2010 meet. The racing license required La Mesa to conduct sixty days of live horse racing from May 28, 2010, to September 6, 2010.

**{4}** As a racetrack licensed by the Racing Commission, La Mesa was entitled to apply to the Board for a gaming operator's license (gaming license) to operate gaming machines on its premises where the live racing is conducted. NMSA 1978, § 60-2E-27(A) (2005) (amended 2009) ("A racetrack licensed by the state racing commission pursuant to the Horse Racing Act . . . to conduct live horse races or simulcast races may be issued a gaming operator's license to operate gaming machines on its premises where live racing is conducted."). La Mesa applied for a gaming license, and on June 11, 2009, the Board granted La Mesa a conditional gaming license, subject to La Mesa satisfying seven conditions. Conditions Nos. 2 and 3 were that:

> 2. [La Mesa] shall submit an unconditional letter of commitment for funding sufficient to complete the construction of the racetrack facilities necessary to conduct live racing, as outlined in phase 2 in [La Mesa's] license application, and do so on or before December 31, 2009.

> 3. [La Mesa] shall submit a plan to be approved by the Board, detailing its legal and financial [divestiture] from LLMN Investments, LLC, within 30 days of the issuance of this Decision and Order, which should include the proposed restructuring of Horse Racing at Raton, L.P. and Horse Racing at Raton Management, LLC, as necessary and the [divestiture] shall be completed by December 31, 2009.

## A. La Mesa's First Appeal

2

**{5}** On May 4, 2010, the Board held a special meeting to consider whether to take action against La Mesa for its failure to satisfy Conditions 2 and 3 of the conditional gaming license. The Board made findings that in La Mesa's original application for the gaming license, La Mesa represented its casino would open by September 2009; that it thereafter represented its casino would open on or before January 31, 2010; and that it subsequently represented it would open the casino by the end of April 2010. The Board further noted that on March 4, 2010, it had placed an additional condition on the gaming license that the casino be open for gaming on or before May 1, 2010. The Board determined: (1) La Mesa failed to satisfy Conditions 2 and 3 under which the conditional gaming license was issued; (2) La Mesa failed to satisfy the additional condition that the facility be open on or before May 1, 2010; and (3) that the gaming license expired because a gaming license is only valid for one year and must be renewed annually, and La Mesa had failed to timely submit a proper renewal application, accompanied with the proper fee.

**{6}** The Board denied the conditional gaming license granted to La Mesa on June 11, 2009, for failure to meet Conditions Nos. 2 and 3 and ordered that the license was deemed void, effective immediately. In the alternative, the Board directed that an administrative complaint be filed to revoke the conditional gaming license because La Mesa failed to meet the condition that it be open for gaming by May 1, 2010. Finally, the Board concluded that the gaming license had expired because La Mesa failed to timely submit a complete renewal application, together with the proper fees.

**{7}** On June 3, 2010, La Mesa appealed from the Board's May 4, 2010 order and requested a hearing pursuant to Section 60-2E-59(A) ("Any person aggrieved by an action taken by the [B]oard or one of its agents may request and receive a hearing for the purpose of reviewing the action."). The Board appointed a hearing officer to conduct the hearing. *See* § 60-2E-59(B)(2) (stating that the Board shall adopt regulations for the appointment of a hearing officer to conduct the hearing and make recommendations to the Board not more than thirty days after the hearing is completed). The positions of the Board and La Mesa were presented at the hearing by their respective attorneys.

**{8}** The Board filed a motion to dismiss the appeal with prejudice on August 9, 2010, on the basis that La Mesa's gaming license was void as a matter of law because La Mesa had not run any live horse races during its 2010 licensed race meet, and La Mesa had no actual ability to run live horse races for the remainder of its 2010 race meet. *See* § 60-2E-27(B)(2) (providing that unless a statutory exception applies, a racetrack's gaming operator's license "shall automatically become void" if "the racetrack fails to maintain a minimum number of four live race days a week with at least nine live races on each race day during its licensed race meet"). The Board argued that because the gaming license was void, La Mesa's appeal of the Board's revocation of the license was moot. In response, La Mesa argued that because La Mesa had filed a request with the Racing Commission to vary its live racing dates, it satisfied a statutory exception for maintaining fewer than the required number of racing days or races. *See* § 60-2E-27(F) (stating that obtaining written approval from the Racing Commission to vary the minimum number of live race days or races, when the variance is

3

due to specified reasons, does not constitute maintaining fewer than four live race days or the minimum number of live races on each race day).

**{9}**     The hearing officer held a hearing on the motion to dismiss on September 17, 2010. The Board and La Mesa were given a full opportunity to present testimony, submit exhibits, and make arguments in support of their respective positions.  At the hearing, it was undisputedly established that La Mesa held no horse races during its scheduled race meet from May 28, 2010, to September 6, 2010.  Further, evidence was presented that La Mesa had no ability to hold live horse races at Raton because it had none of the facilities necessary to conduct live horse racing.  "[T]here are no barns built, there is no grandstand, there is no furnished track, no rail, no infield, no paddock nor any jockey's quarters."  In addition, the director of the Racing Commission testified that the Racing Commission had not granted approval to La Mesa to change its race dates and that the original race meet lasting from May 28, 2010, to September 6, 2010, was still in effect.

**{10}**     Based on this evidence, the hearing officer concluded that La Mesa had failed to hold the required live races and that La Mesa had not established an exception under Section 60-2E-27(F).  Thus, the hearing officer concluded that Section 60-2E-27 rendered La Mesa's gaming license void and recommended that the Board dismiss La Mesa's appeal as moot. The Board adopted the hearing officer's recommendation in a decision and order dated October 27, 2010, and dismissed La Mesa's appeal.  La Mesa now appeals to this Court pursuant to Section 60-2E-60(A).

**B.     La Mesa's Second Appeal**

**{11}**     While the first appeal was pending, the Board's executive director sent La Mesa a letter on August 9, 2010, notifying La Mesa that pursuant to Section 60-2E-27(B)(2), its gaming license was automatically void due to its failure to hold live races during its licensed meet. La Mesa appealed from this determination as well and requested a hearing.  The same hearing officer who presided over the first appeal was appointed to preside over the hearing on this appeal, and the same attorneys also appeared on behalf of the Board and La Mesa.

**{12}**     In this appeal, La Mesa contended that the Board's executive director did not have authority to declare that La Mesa's gaming license was invalid without action by the Board. La Mesa further argued that any contention that its gaming license was void under Section 60-2E-27(B)(2) was premature, because on March 18, 2010, it had applied to the Racing Commission for a variance of its minimum number of race days or races, and the Racing Commission had not yet made a ruling on the request.  La Mesa said that on April 15, 2010, the Racing Commission had tabled the variance request and that a hearing on its request was scheduled for December 21, 2010, before the Racing Commission's hearing officer.

**{13}**     On October 27, 2010, the Board filed a motion for summary judgment.  The basis was that under the doctrine of res judicata, La Mesa was bound by the Board's decision in the first appeal in which the Board determined that La Mesa's gaming license was

automatically void under Section 60-2E-27(B)(2). The Board subsequently filed a supplemental submission in support of the recommendation for summary judgment. This consisted of legal arguments concerning the executive director's authority to send La Mesa the August 9, 2010 letter notifying La Mesa that its gaming license was automatically void due to its failure to hold live races during its licensed meet, and an order of the Board dated January 6, 2011, in which the Board affirmed and ratified the authority of the executive director to make the determination set forth in his August 9, 2010 letter to La Mesa. In addition, the Board submitted an affidavit of the Board's executive director stating that La Mesa had not provided to the Board written approval from the Racing Commission allowing La Mesa to vary its minimum number of live race days or races.

{14}    The hearing officer held a hearing on the motion for summary judgment on November 23, 2010. The Board and La Mesa were both represented by counsel and were once again given a full opportunity to present testimony, submit exhibits, and make arguments in support of their respective positions. On January 31, 2011, the hearing officer issued his recommendation in the second appeal. The hearing officer found that the executive director had authority to send La Mesa the August 9, 2010 letter, or in the alternative, that the Board had affirmed and ratified the determination made by the executive director in the August 9, 2010 letter. Further, the hearing officer recommended that under the doctrines of res judicata or collateral estoppel, the Board grant summary judgment against La Mesa, or in the alternative, dismiss La Mesa's second appeal because La Mesa's gaming license was automatically voided by Section 60-2E-27(B)(2). The Board accepted the hearing officer's recommendation in an order dated February 28, 2011. La Mesa also appeals from this order of the Board pursuant to Section 60-2E-60(A).

## II.    ANALYSIS

{15}    La Mesa contends that the Board erroneously concluded that its gaming license was void and consequently erred in dismissing its first appeal as moot and that the summary judgment entered by the Board on its second appeal must be reversed. We will set aside administrative action of the Board only if it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the whole record; or (3) otherwise not in accordance with law." Section 60-2E-60(B). In addition, we note that the Board made extensive findings of fact in support of its conclusions and that La Mesa does not challenge those findings of fact on appeal. We therefore deem the Board's findings of fact binding on appeal. *Cf. Alfred v. Anderson*, 86 N.M. 227, 228, 522 P.2d 79, 80 (1974) (stating that where the district court findings are not attacked on appeal as inaccurate, incomplete, or inadequate, they are binding on appeal).

### A.    Dismissal of La Mesa's First Appeal as Moot

{16}    The Board dismissed La Mesa's first appeal as moot on the grounds that no relief could be granted to La Mesa because its gaming license had been rendered void by Section 60-2E-27(B)(2). On appeal, La Mesa asserts that its gaming license was not void due to an

exception contained in the same statute. Because these arguments require statutory interpretation, our review is de novo. *See Att'y Gen. v. N.M. Pub. Regulation Comm'n*, 2011-NMSC-034, ¶ 10, 150 N.M. 174, 258 P.3d 453 ("Statutory interpretation is an issue of law, which we review de novo." (internal quotation marks and citation omitted)).

**{17}** We begin with the language of the statute. Section 60-2E-27(B)(2) in pertinent part states: "A racetrack's gaming operator's license shall *automatically become void* if . . . the racetrack fails to maintain a minimum of four live race days a week with at least nine live races on each race day during its licensed race meet, *except as provided in Subsection F* of this section." (Emphasis added.) The plain language of Section 60-2E-27(B)(2) automatically voids a gaming license if the licensee fails to hold the requisite number of live horse races during its race meet, unless Subsection F applies. *See Att'y Gen.*, 2011-NMSC-034, ¶ 10 (stating that in construing statutes, "[w]e follow classic canons of statutory construction, looking first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." (internal quotation marks and citation omitted)). La Mesa does not dispute that it failed to hold the number of live race days or races required by Section 60-2E-27(B)(2).

**{18}** However, La Mesa contends that its gaming license is not automatically void pursuant to Section 60-2E-27(F)(6), which provides:

> F. Maintaining fewer than four live race days or nine live races on each race day during a licensed race meet does not constitute a failure to maintain the minimum number of live race days or races as required by Paragraph (2) of Subsection B of this section *if the licensee submits to the board written approval by the state racing commission for the licensee to vary the minimum number of live race days or races*, and the variance is due to:
>
> . . . .
>
> (6) any other act, event or occurrence that the board finds is not within the control of the licensee even with the exercise of reasonable diligence or care.

(Emphasis added.) La Mesa argues that Section 60-2E-27(F)(6) applies because it submitted a request to the Racing Commission to vary its minimum number of race days or races, which was at first tabled by the Racing Commission and then set for a hearing before its hearing officer. La Mesa further asserts that the applicable "other act, event or occurrence" was due to the failure of one of its contractors to have a proper license, resulting in a delay in building a portion of the racing and gaming facilities imposed by the New Mexico Construction Industries Division. *See* § 60-2E-27(F)(6). Thus, La Mesa asserts that the Board was premature in ruling that the gaming license was void before the Racing

Commission ruled on its variance request and that the gaming license was not rendered void by Section 60-2E-27(B)(2). We disagree.

**{19}** The plain meaning rule of statutory construction requires us to give effect to the language of a statute and refrain from further interpretation when the language used in the statute is clear and unambiguous. *See Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135. To prevent its gaming license from becoming automatically void, Section 60-2E-27(F)(6) clearly and unambiguously required La Mesa to submit to the Board written approval obtained from the Racing Commission to vary the number of its live race days or races, and La Mesa failed to submit the required approval to the Board. We acknowledge that La Mesa submitted its variance request to the Racing Commission in March 2010, before the meet ended and that the Racing Commission, for reasons not disclosed by the record, tabled the variance request and then set it for hearing before a hearing officer in December 2010. However, the undisputed fact is that when the Board's hearing officer heard the motion to dismiss the first appeal on September 17, 2010, La Mesa had no track, no rail, no infield, no paddock, no jockey's quarters, no grandstand, and could not conduct live horse racing. As of September 17, 2010, the race meet had already expired, and the statute says nothing about the effect of a variance request that is pending before the Racing Commission after the meet has already expired. The undisputed fact is that La Mesa did not obtain written approval from the Racing Commission to vary its minimum number of live race days or races. We therefore affirm the Board's conclusion that Section 60-2E-27(F)(6) is inapplicable and that Section 60-2E-27(B)(2) rendered La Mesa's gaming license automatically void when La Mesa failed to maintain a minimum number of four live race days a week with at least nine live races on each day during its licensed race meet.

**{20}** La Mesa argues that the issues in its first appeal are not moot because its gaming license could be reinstated by the Board, which would then revive the same issues raised in the first appeal. *See* 15.1.10.42(F) NMAC (2/28/2005) (amended 12/15/2010) ("Voiding of a license by the [B]oard pursuant to Section 60-2E-27(B) of the act and these rules does not constitute a denial, permanent suspension or revocation of the license for cause by the [B]oard or a limiting action by the [B]oard on the gaming operator licensee."). We disagree. A case is rendered moot "when no actual controversy exists, and the court cannot grant actual relief." *Gunaji v. Macias*, 2001-NMSC-028, ¶ 9, 130 N.M. 734, 31 P.3d 1008 (internal quotation marks and citations omitted). It is completely speculative whether La Mesa's racing license will be reinstated by the Board in the future and what circumstances will exist between the parties at that time. La Mesa offered no evidence at the hearing or on appeal that it had reapplied for a license or was otherwise entitled to reinstatement of its license. Thus, we affirm the Board's dismissal of the first appeal as moot.

**B.       The Entry of Summary Judgment on La Mesa's Second Appeal**

**{21}** La Mesa's second appeal arose when it appealed from the letter sent by the director of the Board notifying La Mesa that its gaming license was rendered void by Section 60-2E-

7

27(B)(2). Two issues were raised by La Mesa in the second appeal: (1) whether the gaming license was void under Section 60-2E-27(B)(2) when the Racing Commission had tabled La Mesa's request for variance of its race dates; and (2) whether the director had the authority to unilaterally conclude the license was void without the Board's action. *See* 15.1.10.42(D)(1) NMAC (providing that "[u]pon the determination by the [B]oard that a racetrack gaming operator licensee has failed to maintain the minimum number of live race days or races as required by the act and these rules: (1) the gaming operator's license shall become automatically void and of no legal effect"). The Board again concluded that La Mesa's gaming license was automatically void under Section 60-2E-27(B)(2). Additionally, the Board ruled that res judicata barred La Mesa from again arguing in the second appeal whether the gaming license was rendered void by Section 60-2E-27(B)(2). Finally, the Board determined that the director had the authority to notify La Mesa that its gaming license had become void. We address the issues in turn.

**{22}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "We review these legal questions de novo." *Id.*

**{23}** We have already concluded that Section 60-2E-27(B)(2) automatically voided La Mesa's gaming license because La Mesa failed to hold live horse races and failed to satisfy the exception enumerated in Section 60-2E-27(F)(6). La Mesa has presented no additional disputed facts requiring further analysis, and we therefore conclude that the Board properly granted summary judgment against La Mesa in the second appeal. Because summary judgment was properly granted on this issue, we deem it unnecessary to determine whether the Board correctly ruled that res judicata also required dismissal of La Mesa's second appeal.

**{24}** Moreover, the issue pertaining to the authority of the director to send the letter to La Mesa has been rendered moot. It is undisputed that after the director sent La Mesa the letter, the Board approved and ratified the director's action in stating that La Mesa's gaming license was void. *See Bd. of Cnty. Comm'rs v. Chavez*, 2008-NMCA-028, ¶ 17, 143 N.M. 543, 178 P.3d 828 ("Ratification is the adoption or confirmation by a principal of an unauthorized act performed on its behalf by an agent." (internal quotation marks and citation omitted)). Thus, even if we assume that the director had no authority to determine on his own that La Mesa's gaming license was void, the Board's approval and ratification of the director's act renders La Mesa's argument moot. *See Chavez*, 2008-NMCA-028, ¶¶ 1, 21-22 (concluding that summary judgment was properly granted on a claim alleging that the mayor took unauthorized unilateral action because it was undisputed that the city council subsequently ratified the mayor's action).

## III.  CONCLUSION

**{25}** We hold that the Board's action in dismissing both appeals was not arbitrary, capricious, or contrary to law and was based on substantial evidence in the whole record. It is therefore unnecessary for us to address any other issues raised by La Mesa. The orders of the Board are affirmed.

**{26}  IT IS SO ORDERED.**

_____

**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI, Judge**

**Topic Index for *La Mesa Racetrack & Casino v. NM Gaming Control Board*, Docket Nos. 31,156/30,862**

**ADMINISTRATIVE LAW AND PROCEDURE**

Administrative Appeal
Arbitrary and Capricious Actions
Judicial Review
Sufficiency of Evidence

**CIVIL PROCEDURE**
Summary Judgment

**MISCELLANEOUS STATUTES**
Horse Racing Act

**STATUTES**
Interpretation
Legislative Intent