2007-NMCA-137

170 P.3d 1003

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Elizabeth SHIRLEY, Defendant– Appellant.**

No. 26,147.

Court of Appeals of New Mexico.

Aug. 23, 2007.

Certiorari Denied, Oct. 4, 2007.

Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Kathleen T. Baldridge, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Defendant was convicted of distribution of a controlled substance, contrary to NMSA 1978, § 30–31–22(A)(2)(a) (2006). On appeal, Defendant contends that the district court erred as a matter of law in denying her motion to dismiss on the ground that she was entrapped. Defendant also argues that the district court erred by allowing a police officer to testify after being in the courtroom during the pendency of the trial. We hold that the district court correctly denied Defendant's motion for a directed verdict because there were disputed facts that should be resolved by the jury. We reject Defendant's second issue on appeal. We therefore affirm Defendant's conviction.

## BACKGROUND

{2} Defendant was arrested after selling methamphetamine to an undercover police officer. Before trial, Defendant filed a motion to dismiss, arguing that the methamphetamine was given to her by the confidential informant who helped organize the sale between Defendant and the undercover officer. According to Defendant, the sale amounted to a "circular transaction" and she was effectively entrapped. As such, Defendant argued that the charges against her should be dismissed.

{3} The district court held a hearing on Defendant's motion. At the hearing, Defendant testified that she met a man named John through a mutual friend. When Defendant first met John, she noticed that one of John's dogs was sitting in his car. Because it was a hot day and because the dog looked ill, Defendant expressed concern for the dog. John told Defendant that the dog was staying in his car because it had fought with another dog and John was trying to keep the dogs separated. He told Defendant that he was trying to find someone to care for the dog. Defendant offered to take care of the dog. John told Defendant that in exchange for caring for his dog, he would provide her with marijuana and/or methamphetamine. Eventually, according to Defendant, the dog became unmanageable and her relationship with John soured, but he continued to check on the dog and provide Defendant with drugs.

{4} Defendant testified that on June 21, 2004, John called her on the telephone and told her that he had "some green or some white"-meaning marijuana or methamphetamine-and asked if it was okay if he came over with a friend. According to Defendant, she told John, "[I]f the price [was] right, come on over." Defendant testified that when John and his friend arrived, they made small talk for some time and then she was asked by John or his friend if she had "the

stuff." Defendant testified that she was shocked when they asked her this because she expected them to be bringing the drugs. She told John and his friend that she did not have anything.

{5} According to Defendant, John and his friend kept asking her about purchasing methamphetamine. Defendant testified that she had some crushed-up pills tucked away in an antique bottle bag, but was not sure if it was actually methamphetamine. She finally decided to give John and his friend the crushed-up pills so they would stop bothering her. She testified that she had originally obtained the crushed-up pills from John.

{6} Defendant stated that when John originally gave her the crushed-up pills, she had other people look at the pills to figure out what they were. She testified that she believed that the pills were pseudoephedrine pills "or something" and that no one would touch them, and that was why she still had the pills in the house.

{7} Defendant eventually decided to sell the drugs to John and his friend for fifty dollars. She testified that she went into the back bedroom of the house and separated the drugs into two bags. According to Defendant, she then sold one bag to John and his friend, but the friend ended up taking both bags and giving one bag to John after they left the house.

{8} Defendant testified that she then tried to get John and his friend to smoke the drugs so that she could find out what the drugs were, since she was afraid the pills might contain cyanide or something. She testified that she did not offer to smoke the drugs with them.

{9} On cross-examination, Defendant denied that she had used methamphetamine in the past, claiming that when she was previously convicted for possession of methamphetamine, she only had vitamins, St. John's Wort, and green alfalfa in her possession. She also testified during both her direct and cross-examination that she believed that John was providing her drugs to entice her to become hooked and start buying drugs from him.

{10} At the same hearing, Defendant called Officer Kenneth Johnson to the stand. Officer Johnson testified that John was a confidential informant and that he and John went to Defendant's house on June 21, 2004, to purchase drugs. Officer Johnson testified that John had previously signed up as a confidential informant and that he was paid by the Department to introduce officers to individuals dealing drugs.

{11} Officer Johnson testified that when he and John asked Defendant for drugs on June 21, 2004, she acted surprised by the question. According to Officer Johnson, Defendant told him that she did not usually sell drugs and that she needed to be careful because she just finished parole. Officer Johnson did not consider Defendant's apparent surprise at being asked for drugs or any of her other statements unusual, as a number of individuals have acted surprised and/or have told him that they do not sell drugs and later sell drugs to him multiple times. Defendant then told Officer Johnson that she had some drugs for personal use in the back. She then went into the back room and brought out two small bags of methamphetamine. Officer Johnson testified that it did not take Defendant much time to get the drugs-just enough time for her to get down the hallway and back-and he barely lost sight of her.

{12} Officer Johnson testified that the bags contained methamphetamine, not crushed pills. He said that he gave Defendant fifty dollars, and in exchange she gave him one of the bags. Defendant then asked Officer Johnson to smoke some of the drugs with her. When he refused, Defendant asked him to snort some with her. Officer Johnson stated that he declined. Defendant then put some of the methamphetamine in a piece of foil and asked John for a lighter. Officer Johnson testified that he left the house with the bag of drugs that he had purchased.

{13} According to Officer Johnson, when he left the house, he sat on the back of the truck he had arrived in and waited for John to come out. A few minutes later, John emerged from the house. Officer Johnson testified that after exiting the house, John

gave him the second bag of methamphet-amine. When Officer Johnson asked John what it was, John told him that he had thought that Officer Johnson left the house without taking the drugs, so he grabbed the bag when he left. Contrary to Defendant's testimony, Officer Johnson testified that he did not give John any drugs and instead put the two bags of methamphetamine into evidence. Officer Johnson further testified that, based on his experience, confidential informants do not give away drugs for free.

{14} After Officer Johnson's testimony, Defendant argued that the State had failed to rebut her assertion that John had provided her with the drugs. The district court stated, however, that it was not entirely clear to it that what Defendant claimed actually happened. The court noted that there were factual disputes concerning what actually happened and questions of credibility that would be best resolved by the jury. The court then denied Defendant's motion to dismiss. Defendant was subsequently convicted by a jury. This appeal follows.

## DISCUSSION

{15} On appeal, Defendant contends that the district court erred by failing to dismiss the charges against Defendant because Defendant's evidence regarding entrapment was undisputed by the State. Defendant further contends that her conviction should be reversed on the ground that Rule 11–615 NMRA was violated. Addressing each issue in turn, we affirm Defendant's conviction.

### Entrapment

{16} In New Mexico, there are two types of entrapment-subjective entrapment and objective entrapment. *See State v. Vallejos*, 1997–NMSC–040, ¶ 10, 123 N.M. 739, 945 P.2d 957; *Baca v. State*, 106 N.M. 338, 339, 742 P.2d 1043, 1044 (1987). At issue in the present case is whether Defendant established objective entrapment as a matter of law.

{17} There are two ways that objective entrapment can be demonstrated:

[I]f a jury finds as a matter of fact that police conduct created a substantial risk that an ordinary person not predisposed to commit a particular crime would have been caused to commit that crime, *or* if the trial court rules as a matter of law that police conduct exceeded the standards of proper investigation, then criminal charges should be dismissed.

*Vallejos*, 1997–NMSC–040, ¶ 11, 123 N.M. 739, 945 P.2d 957. Thus, under New Mexico law, "objective entrapment has two distinct components, one factual and the other normative." *Id.* ¶ 10. Under the factual component, "the jury examines whether the police engaged in conduct creating a substantial risk that a person not predisposed to commit the crime would have been induced to commit it." *Id.* ¶ 12. Under the normative component, the district court must

carefully scrutinize[ ] both the methods and purposes of police conduct to determine whether police tactics offend our notions of fundamental fairness, or are so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.

*Id.* ¶ 16 (internal quotation marks and citation omitted). Our cases have established that coaxing a defendant into a circular transaction, in which the government provides the defendant with the drugs that the government then purchases, is one species of objective entrapment. *See id.* ¶ 18. In the present case, Defendant contends that the district court erred in its analysis and application of the normative component of objective entrapment.

{18} To the extent that Defendant argues that the facts as alleged below are undisputed and that the district court erred as a matter of law in denying her motion to dismiss, we will review the district court's denial of the motion to dismiss de novo. *See State v. Rendleman*, 2003–NMCA–150, ¶ 27, 134 N.M. 744, 82 P.3d 554; *State v. Roman*, 1998–NMCA–132, ¶ 8, 125 N.M. 688, 964 P.2d 852; *State v. Wasson*, 1998–NMCA–087, ¶¶ 5–6, 125 N.M. 656, 964 P.2d 820. However, to the extent that the facts are disputed, we will defer to the district court's findings of fact where supported by substantial evidence. *See State v. Jason L.*, 2000–NMSC–018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

{19} "If a defendant believes that police conduct exceeded the standards of proper investigation, a motion to dismiss could be filed on the objective entrapment theory." *Vallejos*, 1997–NMSC–040, ¶ 34, 123 N.M. 739, 945 P.2d 957. If a motion to dismiss is filed, the district court should hold an evidentiary hearing, like hearings held on motions to suppress, to decide "as a matter of law whether the standards were exceeded." *Id.* If the court decides as a matter of law that police conduct exceeded the standards of proper investigation, the charges against the defendant should be dismissed. *Id.* ¶ 11. If, on the other hand, the court decides that the standards were not exceeded, the court could still give an instruction on objective entrapment to the jury, "assuming the production of sufficient evidence to support the defense." *Id.* ¶ 34. Notably, our Supreme Court in *Vallejos* recognized that "[w]hile the normative inquiry is most appropriately conducted by the court, the jury may resolve factual disputes where credibility is an issue or where there is conflicting evidence pertaining to what events transpired." *Id.* ¶ 20; *see State v. Sellers*, 117 N.M. 644, 648, 875 P.2d 400, 404 (Ct.App.1994) (holding that where "there were questions of fact, including Defendant's credibility," the question of whether entrapment occurred should go to the jury); *State v. Sheetz*, 113 N.M. 324, 326, 825 P.2d 614, 616 (Ct.App.1991) (holding that where the state is able to raise doubts regarding the defendant's credibility, the district court cannot find entrapment as a matter of law).

{20} On appeal, Defendant contends that once a defendant has established a prima facie case of objective entrapment, the burden shifts to the state to disprove that the entrapment occurred with its own affirmative evidence. If the state is unable to do this, Defendant maintains that dismissal is required. In the present case, Defendant argues that she did establish a prima facie case of entrapment and that the State's attempts to disprove it were simply inadequate as a matter of law. While we agree with Defendant's assertion that she presented evidence of objective entrapment, we also agree with the district court's determination that it could not decide the issue of a matter of law.

{21} While the Supreme Court in *Vallejos* expressly declined to address the question of whether the state can defeat a defendant's motion for dismissal simply "by challenging the credibility of the defendant without coming forth with an affirmative showing that there was no entrapment," *Id.* ¶ 14 n. 6, the Court nonetheless recognized that under the normative inquiry, the jury may still "resolve factual disputes where credibility is an issue or where there is conflicting evidence pertaining to what events transpired." *Id.* ¶ 20. Thus, in the present case, the question necessarily becomes whether there were actually credibility questions or conflicting evidence regarding what transpired on June 21, 2004, such that the district court could not decide as a matter of law that police officers' actions exceeded the standards of proper investigation. We believe that the State has made a sufficient showing that such factual questions did exist and that it was therefore appropriate for the district court to deny Defendant's motion to dismiss.

{22} Although not directly contradicting Defendant's assertion that she received the drugs from John, Officer Johnson's testimony raised a number of questions regarding the veracity of Defendant's claims. According to Defendant's version of events, John gave her a bag of crushed-up pills that no one wanted to try, so Defendant put the pills in a back bedroom. Defendant maintains that these drugs were later sold to Officer Johnson. To the contrary, Officer Johnson's testimony indicates that the drugs sold to him were not crushed-up pills, but were methamphetamine. We agree with the State that the conflicting testimony raises questions as to where Defendant obtained the methamphetamine and also as to whether Defendant's version of events is credible.

{23} Additionally, Defendant maintained that she took the time to separate the drugs into two bags. On the other hand, Officer Johnson testified that it took little time for Defendant to retrieve the drugs from the back bedroom-just enough time to walk down the hall and back. Officer Johnson's testimony, if true, seems to indicate that Defendant already had the drugs packaged for sale,

thus bringing into doubt Defendant's assertion that she did not sell drugs. Again, such testimony raises doubts regarding Defendant's version of events.

{24} Further, as pointed out by the State, Defendant's purported understanding as to why John was supplying her with drugs changed during her testimony. Defendant initially stated that John gave her drugs in return for her watching his dog. Later in her testimony, however, Defendant maintained that John was giving her drugs to get her hooked on them. We agree with the State that Defendant's own testimony raises questions regarding her credibility. As such, we believe that the district court properly denied Defendant's motion to dismiss.

{25} Defendant, relying on *United States v. Bueno*, 447 F.2d 903 (5th Cir.1971), argues that the State cannot rebut her entrapment claim solely by attacking her credibility; instead, Defendant maintains that the State was required to call John to the stand. In *Bueno*, a confidential informant purchased drugs in Mexico. *Id.* at 904. The informant then used some of the drugs with the defendant. *Id.* Back in the United States, the informant asked the defendant to sell the drugs for him. *Id.* The defendant was later arrested for selling the drugs to an undercover officer. *Id.* at 905.

{26} On appeal to the Fifth Circuit, the court held that, as a matter of law, the defendant could not be convicted of the sale of the drugs. *Id.* at 906. The court rejected the government's argument that "the issue of entrapment is one for the jury to determine rather than the court" and the government's assertion that although the defendant's version of events was undisputed, "the jury was still entitled to reject his testimony." *Id.* at 905. The court held that the government was not permitted simply to challenge the defendant's credibility, but was required to come forward with actual evidence disputing the defendant's entrapment claim. *Id.* at 906. The court noted that if the confidential informant's "testimony would tend to disprove the [d]efendant's story, it was up to the government to produce him." *Id.*

{27} Initially, we observe that there were two holdings in *Bueno*. One was that circu-lar transactions amounted to entrapment as a matter of law. *Id.* The other was that a defendant's uncontradicted testimony must be believed. *Id.* Although the first holding in *Bueno* has been seriously questioned, *see, e.g., United States v. Rey*, 811 F.2d 1453, 1456 n. 2 (11th Cir.1987) (indicating that the United States Supreme Court disapproved of *Bueno* in *United States v. Russell*, 411 U.S. 423, 427–28, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), and overruled *Bueno* sub silentio in *Hampton v. United States*, 425 U.S. 484, 488–89, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)), that holding is an established part of New Mexico law. *See Vallejos*, 1997–NMSC–040, ¶ 18, 123 N.M. 739, 945 P.2d 957.

■ {28} We now hold that *Bueno's* second holding should not be followed in New Mexico. We first observe that it has been severely questioned in the federal courts. *See, e.g., United States v. Gurule*, 522 F.2d 20, 24 (10th Cir.1975) (observing that "[t]he per se rule seemingly established in *Bueno* . . . has recently come under attack"); *United States v. Jett*, 491 F.2d 1078, 1080 n. 3 (1st Cir.1974) ("We cannot accept defendant's case of . . . *Bueno* . . . . We believe the court fell short in its analysis, and quite apparently was unaware of *Masciale v. United States*, [356 U.S. 386, 78 S.Ct. 827 (1958)]." (emphasis added)).

{29} In rejecting the holding in *Bueno*, the Tenth Circuit noted that it failed "to see any reason why the jury should be accorded less discretion to disbelieve the defendant's uncorroborated testimony that he was supplied narcotics by the informant." *Gurule*, 522 F.2d at 24. We agree. We believe that allowing Defendant's uncorroborated testimony that John provided her with methamphetamine to establish entrapment as a matter of law is inconsistent with our general understanding that the jury determines the credibility of witnesses and is "not obligated to believe Defendant's testimony, to disbelieve or discount conflicting testimony, or to adopt Defendant's view." *State v. Foxen*, 2001–NMCA–061, ¶ 17, 130 N.M. 670, 29 P.3d 1071; *see State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("[T]he jury is free to reject Defendant's version of the facts."). Indeed, as opined by the district

court in the present case, if we were to accept Defendant's arguments, "all any defendant would have to do is come in here and testify that the [confidential informant] gave [him or her] the [dope] that [was] . . . sold to the agent. And[ ] I have to throw out the case."

{30} We therefore affirm the district court's denial of Defendant's motion to dismiss. In addition, this case is a particularly appropriate one for application of the rule that the jury ordinarily determines credibility. In denying Defendant's motion, the court found that there were conflicting facts regarding the actual events and also that Defendant's credibility was at issue. We believe that such a finding is supported by the facts presented below. Where a defendant's claim of entrapment is uncorroborated, the question of Defendant's credibility is best left to the jury to decide. Thus, although the district court may determine entrapment as a matter of law, it may decline to do so where facts or credibility are disputed. *See Vallejos*, 1997–NMSC–040, ¶ 20, 123 N.M. 739, 945 P.2d 957 ("While the normative inquiry is most appropriately conducted by the court, the jury may resolve factual disputes where credibility is an issue or where there is conflicting evidence pertaining to what events transpired."). As such, we reject Defendant's contention regarding entrapment as a matter of law.

**Rule 11–615**

{31} Defendant contends that the district court erred by permitting Officer Johnson to testify last after remaining in the courtroom throughout the trial. Below, Defendant argued to the court that Officer Johnson should be excluded from the courtroom pursuant to Rule 11–615, because he was essentially a member of the district attorney's office, which created an impermissible conflict of interest. Defendant also argued below that Officer Johnson's presence at the prosecution's table amounted to a comment from the prosecutor as to Officer Johnson's credibility. The district court denied Defendant's motion and allowed Officer Johnson to remain in the courtroom during the trial.

{32} On appeal, Defendant's objections to Officer Johnson's presence in the courtroom have changed. Defendant now argues that the district court erred in denying Defendant's motion because Officer Johnson tailored his testimony to the testimony of other witnesses. Defendant also argues that the district court should have ordered that Officer Johnson testify first in order to avoid giving the State an unfair advantage. Neither argument was raised by Defendant below. As such, Defendant failed to properly preserve her arguments on the issue. *See State v. Varela*, 1999–NMSC–045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)).

{33} Moreover, even if we were to conclude that the arguments were preserved, we hold that they are without merit. Under Rule 11–615, "a party may request that the trial judge exclude witnesses from the courtroom while other witnesses are testifying." *State v. Hernandez*, 115 N.M. 6, 18, 846 P.2d 312, 324 (1993). "However, several exceptions apply. Among these is the exception for investigative agents." *State v. Ryan*, 2006–NMCA–044, ¶ 40, 139 N.M. 354, 132 P.3d 1040. The district court has broad discretion under Rule 11–615 and "[w]e will not disturb the decision of the trial court absent a clear abuse of this discretion and prejudice to the complaining party." *Hernandez*, 115 N.M. at 18, 846 P.2d at 324.

{34} In the present case, Defendant does not argue that Officer Johnson was not an investigative agent, but instead maintains that it was prejudicial to allow him to remain in the courtroom during the trial. In support of her argument, Defendant maintains that Officer Ryan Carr's testimony "left gaping holes to fill and Officer Johnson filled them" by testifying after Officer Carr. However, as the State correctly observes, Officer Carr accompanied Officer Johnson to Defendant's house as backup, and Officer Carr remained in his vehicle during the

drug transaction. Thus, Officer Carr's testimony necessarily covered only what he observed while in the vehicle. Conversely, Officer Johnson testified about what occurred inside Defendant's house; Officer Carr could not testify about such matters because he remained outside the house during the transaction. As such, we do not believe that Defendant's assertion that Officer Johnson "tailor[ed]" his testimony to that of other witnesses is supported by the record.

{35} Because we conclude that Officer Johnson's presence in the courtroom did not prejudice Defendant or otherwise constitute an abuse of discretion, we decline to reverse Defendant's conviction on these grounds.

## CONCLUSION

{36} The district court's denial of Defendant's motion to dismiss and Defendant's conviction are affirmed.

{37} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and IRA ROBINSON, Judges.