**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                                  **NO. 27,144**

**ALICIA KAY TURNBULL-PHILLIPS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Katherine Zinn, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

Defendant appeals her convictions for possession of methamphetamine and tampering with evidence. In the district court, Defendant unsuccessfully moved to suppress evidence seized when a probation officer and a police officer entered and

searched the residence where Defendant was arrested. Defendant entered into a conditional plea of guilt, reserving the right to appeal the denial of her motion to suppress evidence. We affirm the district court's denial of Defendant's motion to suppress.

**BACKGROUND**

Officer Current received a tip from an unnamed citizen-informant that Defendant was using and selling methamphetamine from the residence of Brian Werner (Werner). According to the informant, Defendant was staying at the residence, there was a lot of traffic at the residence, and both Defendant and Werner had a lot of money but no legitimate employment. Officer Current had also received complaints from the Farmington Public Schools about possible drug activity at the residence. Officer Current discovered that both Defendant and Werner were currently on probation for narcotics-related offenses. Based on that information, Officer Current contacted the probation office. Defendant was under the supervision of Tami Danielli, who was not in the probation office at the time of Officer Current's telephone call. Officer Current was able to speak with Candace Montoya (Officer Montoya), the probation officer supervising Werner, about the information he

received. Officer Current also informed Officer Montoya that Defendant had active warrants for her arrest.

Officer Montoya testified that she had been experiencing difficulty locating Werner, she was unable to contact him at his reported residence, he had submitted "dirty UAs" in the past, and she needed to see Werner at the residence as part of her duties as his probation officer. Officer Montoya asked Officer Current and another officer to assist her in her search, and made it clear to the accompanying officers that this was her search. Officer Montoya asked the assisting officers to clear the residence and place everyone into the living room, if such action was necessary. Upon arriving at the residence, Officer Current noticed a car parked in front of the residence that he recognized as belonging to Defendant. Officer Montoya knocked on the door, opened it, and announced, "Probation and Parole." She heard a woman's voice coming from the bedroom and asked who was there. Defendant identified herself, and Officer Montoya recognized her to be Werner's cousin, who had accompanied Werner to the probation office in the past. Officer Montoya told Defendant to come out of the bedroom, to which Defendant responded that she needed to get dressed. Based on Officer Montoya's experience, she believed that Defendant may have been attempting to hide something so she proceeded to the bedroom with

Officer Current following. Once there, Defendant stated that she needed to get her shoe. She leaned down and pulled a plastic baggie containing a white substance from the mattress and threw a plastic bag of needles at Officers Montoya and Current. Defendant put the baggie into her pants and "appeared to be shoving the items into her vagina." Officer Current attempted to handcuff Defendant and began to read her Miranda rights. Defendant fought against Officer Current, but was eventually placed into handcuffs. Officer Montoya noticed that Defendant was staring at another baggie that was on the mattress. Defendant jumped and landed on top of the baggie and attempted to swallow it. Officer Current held Defendant's throat to prevent her from swallowing the baggie, and eventually Defendant spit it out. The baggie contained methamphetamine.

Defendant filed a motion to suppress the evidence seized from her and from the residence. After hearing testimony from Officer Montoya and argument by the parties, the district court denied the motion to suppress. Defendant appeals.

**DISCUSSION**

Defendant contends that the district court erred in denying her suppression motion. "We review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most

favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785.  Defendant's arguments on appeal are as follows:  (1) there was no probable cause or exigent circumstances to justify the warrantless entry of the residence, (2) the officers failed to comply with the knock-and-announce rule before entering the residence, (3) an unlocked door does not eliminate the knock-and-announce requirement, (4) an arrest warrant provides only limited authority to enter a residence and the necessary factors allowing entry were not established in this case, (5) our state constitution provides greater protection than its federal counterpart in that it requires a showing of reasonable suspicion and exigent circumstances to justify entry and search of the residence, and (6) the officers did not have reasonable cause to conduct a probation search particularly where Werner was not asked for permission to search the residence.

**Argument Presented and Rulings Made in the District Court**

In her motion to suppress, Defendant listed a number of points, including:

(6)  Officer Montoya was the probation officer for . . . Werner, but not the Defendant;

. . . .

(26) The actions of [Officer] Current and Officer Montoya violate Defendant's IV Amendment rights under the Constitution of the United States and Article II[,] Section [10] of the Constitution [of] New Mexico;

. . . .

(31) [Officer] Current contacted the Probation Officer for . . . Werner and not the Defendant's Probation Officer;

. . . .

(33) . . . Werner was not at the residence when [Officers] Current and Montoya arrived;

(34) Officer[s] Montoya and Current entered the residence without reasonable and articulative (sic) suspicion that . . . Werner was there and that illegal activity was occurring;

(35) [Officer] Current went along with Officer Montoya for the sole purpose of investigating Defendant;

(36) [Officer] Current's activities of involving Probation was (sic) merely a rouse (sic) in an attempt to circumvent constitutional rights which prevent state actor's (sic) from conducting warrantless searches;

. . . .

(39) [Officer] Current violated [Defendant's] right[s] and used a probation officer to attempt to circumvent the rules requiring him to obtain a search warrant;

. . . .

(41) The probation officer has (sic) no evidence of criminal wrongdoing by . . . Werner and [Officer] Current even states that he saw Defendant's car at the residence, however, no such statement was made regarding . . . Werner's vehicle.

6

As indicated, Defendant's primary arguments were that the authority of Officer Montoya, who was not the probation officer assigned to Defendant, was used as a ruse for the sole purpose of allowing Officer Current to investigate Defendant; Officer Current did not state that he saw Werner's car at the residence; and the officers had no reasonable suspicion that Werner was at the residence or that illegal activity was occurring at the residence.

The district court convened on two different dates to address Defendant's motion to suppress. Defendant was not present at the first setting, so the hearing was continued in order to allow defense counsel to locate Defendant and to contact Officer Montoya in order to have her testify. Defendant was not present at the second setting.

Throughout both hearings, the parties and the district court focused primarily on the question of whether Officer Montoya was acting in her capacity as a probation officer or whether she was acting as a police agent when she entered the residence. At the first hearing, the issue discussed was whether Officers Montoya and Current made a legal entry of the residence. The district judge outlined the requirements for allowing a probation officer to conduct a warrantless search of a probationer's residence, stating that even when there is a probation agreement, a probation officer

7

must have reasonable suspicion and must be acting in his or her role as a probation officer. *See State v. Baca*, 2004-NMCA-049, ¶¶ 43, 55, 135 N.M. 490, 90 P.3d 509. Both parties agreed that the district judge's description of the applicable standard was correct. During that hearing, defense counsel commented that "[Officers Montoya and Current] go to the home, the vehicle of the probationee (sic) is not there, they don't know if he's even home and there's no indication that he is home," and later commented, "It doesn't say, 'you can come in, whether I'm home or not, and search my home.'" After confirming from the State that the home was Werner's residence, the district court stated, "Okay, well, no, it says they have to have reasonable suspicion," to which defense counsel responded, "Okay." Defense counsel then commented that there is "potentially reasonable suspicion . . . to go look into what [Defendant] is doing," but argued that it was not Defendant that they were looking for at the residence. The district court and the prosecutor then engaged in a discussion regarding whether Officer Current contacted Officer Montoya in order to gain entry to the residence, or whether Officer Montoya considered Werner to be an absconder and wished to locate him and perform a urinalysis test on him.

The hearing on the motion to suppress was continued after the parties stipulated to the facts contained in Officer Current's report, but agreed that it was necessary to

hear the testimony of Officer Montoya. During the second phase of the hearing, the testimony from Officer Montoya and the argument of counsel focused on whether Officer Montoya was acting on behalf of Officer Current or was acting in accordance with her position as a probation officer. The district court found that she had reasonable suspicion that Werner was violating his probation agreement based on his failure to report his current residence, and the reasonable suspicion was not solely generated by the call from Officer Current. The district judge commented that, if the only suspicion of illegal activity was based on information from Officer Current, he would have found that Officer Montoya was acting as a police officer and not a probation officer. Defense counsel then stated that "the probation agreement says that they will give permission to search their home, to me the reading of it requires that [the] probation officer comes if you give permission, not [the] probation officer comes, the door's unlocked, let's go in." The district judge responded that the Court of Appeals has ruled that a probation officer cannot enter a house based solely on the agreement. Rather, the probation officer needs reasonable suspicion that defendant or someone in the house was violating probation.

**Search By Probation Officer**

9

As noted above, Defendant raises six issues on appeal. However, the rulings made by the district court mainly addressed the probation officer's authority to enter the residence. The parties agreed that, even though there was a probation agreement in place, Officer Montoya was required to have reasonable suspicion that her probationer had engaged in some behavior that constituted a violation of his probation agreement, and Officer Montoya's actions must have been undertaken as part of her role as a probation officer. Defense counsel's argument and cross-examination of Officer Montoya centered on the idea that Officer Montoya went to the residence only at the behest of Officer Current and not as a probation officer checking on her probationer. For example, during cross-examination of Officer Montoya, defense counsel phrased his questions in terms of Officer Current "initiating" contact with Officer Montoya, and Officer Current needing "assistance" from Officer Montoya. At the end of the suppression hearing, the district judge stated that this might be a good case for appeal based on Officer Montoya's visit to the residence occurring after she received a call from a police officer, to which defense counsel responded, "Okay." In other words, the issue argued, discussed, agreed to, and determined at the suppression hearing was whether Officer Montoya's visit to the residence was simply a ruse or subterfuge in order to allow Officer Current to conduct an investigatory

search based on the information he received that illegal activity had occurred at the residence. Therefore, we address the district court's rulings that Officer Montoya had reasonable suspicion to conduct a warrantless search of the residence, was acting in her role as a probation officer, and Officer Montoya's actions did not amount to a ruse or subterfuge.

Probation is an "act of clemency" and "is not meant to be painless." *Id.* ¶ 42 (internal quotation marks and citations omitted). Under either federal or New Mexico law, the purposes of probation are rehabilitation and deterrence of further misconduct by the probationer. *Id.* ¶ 36. As part of Werner's probation conditions, he agreed to "permit any Probation/Parole Officer to visit me at my home or place of employment at any time," and "will permit a [warrantless] search by the Officer of my person, automobile, residence, property and/or living quarters if he/she has reasonable cause to believe the search will produce evidence of a violation of my conditions of probation."

The regulations of the Probation and Parole Division require reasonable cause to conduct a search, and limit warrantless searches to the probation condition allowing a search when available evidence would cause a reasonable person to believe that the probationer is in possession of forbidden items or evidence of a violation of probation

will be discovered. *Id.* ¶ 38. Probation searches do not require probable cause or exigent circumstances. *Id.* ¶¶ 41, 49. However, reasonable suspicion is required to support a warrantless probation search. *Id.* ¶ 43.

Officer Montoya testified that Werner, one of her highest maintenance offenders, had reported that he was living at a particular address, and was working on, but not living at, another home for which he provided the address. Approximately two weeks prior to the search in this case, Officer Montoya conducted a field visit and discovered that Werner was not living at his reported address. Officer Montoya made a second attempt to locate Werner by visiting the home that Werner was reportedly working on, but she was unable to make contact with him at that home. As part of his probation agreement, Werner was required to get permission before changing his residence, and to submit urine or breath samples for analysis upon request of his probation officer. Officer Montoya testified that she believed she had reasonable suspicion to conduct a search based on her inability to verify Werner's residence, and because the last urinalysis test conducted on Werner was positive. Approximately five days after her second attempt to locate Werner, Officer Montoya received information from Officer Current that Werner was living at the home he claimed to be working on, and that he and Defendant were selling drugs out of the residence. Officer Montoya

testified that Officer Current never asked her to "do a search for him, to open the home to do a search." She emphasized that she had made prior attempts to contact Werner, and she "was going to make a full contact of (sic) him at his reporting residence," whether or not Officer Current had contacted her.

The testimony by Officer Montoya establishes that she had reasonable suspicion that Werner was or may have been in violation of a condition of his probation, both because she discovered he was not living at the address he provided as his residence, and because he had given a "dirty" urine sample and she was unable to locate him to procure a urine sample for testing. Therefore, Officer Montoya had reasonable suspicion to support a warrantless search based on the probation agreement before she received any information from Officer Current. In addition, while Officer Montoya was attempting to locate Werner, Officer Current provided her with information that Werner was living at an address that he had not reported and that he was engaged in selling drugs, which would also have been in violation of his probation agreement. Furthermore, Officer Montoya clearly testified that she would have made contact with Werner at the residence even if she had not received the additional information from Officer Current, and that she was not asked to use her authority to allow a search of the residence by Officer Current. We hold that the evidence supports the district

13

court's determinations that Officer Montoya, acting in her role as a probation officer, had the requisite reasonable suspicion to conduct a warrantless search of Werner's residence, and the use of her authority as a probation officer was not a ruse or subterfuge to allow police to conduct an investigatory search of the residence. Because Officer Montoya had the authority to enter and search Werner's residence without a warrant, we need not address any claim concerning Officer Current's entry into the residence, such as the contention that the requirements for executing an arrest warrant were not met in this case.

**Arguments Not Preserved**

In addition to the argument discussed above, Defendant's brief-in-chief raises several other contentions. As discussed below, however, these arguments were not properly preserved, including Defendant's argument regarding compliance with the knock-and-announce rule prior to entry of the residence, her contention that our state constitution requires reasonable suspicion and exigent circumstances in this case, or her contention that reasonable cause to search the residence did not exist because Officer Montoya did not ask Werner for permission to search.

In order to preserve an issue for appeal, Defendant must have made a timely and specific objection that apprises the district court of the nature of the claimed error and

14

allows the district court to make an intelligent ruling thereon. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280; Rule 12-216(A) NMRA (requiring that "it must appear that a ruling or decision by the district court was fairly invoked" in order to preserve a question for review); *see also State v. Granillo-Macias*, 2008-NMCA-021, ¶ 11, 143 N.M. 455, 176 P.3d 1187 (holding that the defendant's argument on appeal was not properly preserved where the defendant made no mention of compliance with NHTSA requirements or standards and cited to no case law on those issues), *cert. denied*, 2008-NMCERT-002, 143 N.M. 665, 180 P.3d 672; *State v. Shirley*, 2007-NMCA-137, ¶¶ 31-32, 142 N.M. 765, 170 P.3d 1003 (determining that a defendant's argument on appeal pertaining to a police officer tailoring testimony to that of other witnesses was not properly preserved for appeal where the defendant's argument below centered on conflict of interest, and the district court was not alerted with sufficient specificity to the argument raised on appeal so that an intelligent ruling could be made), *cert. denied*, 2007-NMCERT-010, 143 N.M. 73, 172 P.3d 1285. The primary purposes for the preservation rule are: (1) to specifically alert the trial court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to

15

create a record sufficient to allow this Court to make an informed decision regarding the contested issue. *See State v. Lopez*, 2008-NMCA-002, ¶ 8, 143 N.M. 274, 175 P.3d 942, *cert. denied*, ___ NMCERT ___, ___ N.M. ___, ___ P.3d. ___ (No. 30,759, Dec. 19, 2007). Where a party, such as Defendant, has a number of theories for why evidence should be suppressed, she was required to alert the district court to those theories to permit the district court to make rulings accordingly. *See State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768.

On appeal, Defendant claims that the officers did not comply with our knock-and-announce rule when they knocked, opened the door, walked in, and then announced their presence. Defendant did not include this argument in her motion to suppress, and at the hearing below, defense counsel stated only that the officers "come up to the door, do like a knock and announce, come in and [Defendant] is in the back bedroom." This argument was plainly not made below, and cannot be raised for the first time on appeal.

Defendant appears to argue that the New Mexico Constitution requires the existence of not only reasonable suspicion, but also exigent circumstances, in order to allow probation officers to conduct a warrantless search, including a search based on a probation agreement. Defendant claims that she preserved this argument by

asserting "the greater protections afforded under Article II, Section 10 and cit[ing] to *Gomez*." Defendant does not provide a reference to the record for her claims. Furthermore, we find nothing in the record indicating that Defendant made the specific argument below that she now asserts on appeal, or that she provided the district court with facts to support the argument. *See In re Estate of Heeter*, 113 N.M. 691, 694, 831 P.2d 990, 993 (Ct. App. 1992) (holding that an appellate court will not search the record to find support for appellant's claims). Moreover, as discussed earlier in this opinion, this Court has already decided that under the New Mexico Constitution a warrantless probation search does not require exigent circumstances.

At the hearing below, defense counsel pointed out that Werner was not at the residence at the time of the search, Officer Current did not state that he saw Werner's car at the residence, and there was nothing to indicate that Werner was "even home." Defense counsel did not, however, explain the possible legal significance of these facts to the district court, and never attempted to cite any authority that might indicate why it mattered whether Werner was home or not at the time of the search. On appeal, Defendant argues for the first time that under the probation agreement, as well as the regulations of the Probation and Parole Division, Officer Montoya was required to seek permission for the search from Werner. Since Werner was not at the

17

residence, he was never asked for such permission and Defendant claims the entry was therefore illegal.

We hold that this argument was not raised in the district court with sufficient specificity as to alert the district judge to the claim, and allow him to make an intelligent ruling on the specific issue. Below, the only possible reference to the claim occurred when defense counsel stated that "the probation agreement says that they will give permission to search their home, to me the reading of it requires that the probation officer comes if you give permission, not [the] probation officer comes, the door's unlocked, let's go in." Based on the district court's response, that the case law requires more than just a probation agreement to authorize entry into a probationer's home, it is obvious the district court was not alerted to the argument Defendant now makes on appeal. Defendant did not follow up on her argument, and did not cite any authority in support of it. In addition, a review of the entirety of the discussions at the bifurcated hearing clearly shows that the district court was never alerted to the argument now made by Defendant, that Officer Montoya was required to meet with Werner, and be granted or denied permission to search his residence. Instead, the primary focus of the hearing was Defendant's claim that the entry into the residence was accomplished by subterfuge or ruse. Because the argument was not properly

raised below, the State was denied the opportunity to respond to the argument, the district court was denied the opportunity to provide an informed and intelligent ruling on the argument, and this Court is left without an adequate record to review the issue.

We hold that the arguments discussed in this section of our opinion were not properly preserved for purposes of appeal. Therefore, we do not address the merits of those arguments.

**CONCLUSION**

We affirm the district court's decision to deny Defendant's motion to suppress evidence.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Judge**

_____
**MICHAEL E. VIGIL, Judge**