This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 33,664**

**JEFFREY AXTOLIS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Jerry H. Ritter Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

{1}    Defendant Jeffrey Axtolis appeals from his conviction after a jury trial for distributing methamphetamine in violation of NMSA 1978, Section 30-31-20(A)(2), (B)(1) (2006). He contends that, although he sold methamphetamine to an undercover police officer, he did so because he was offered sex by the girlfriend of the confidential informant (CI) who was working with the police in exchange for making the sale. He argues that such a practice was unconscionable, amounting to normative entrapment that required the district court to dismiss the charge or, alternatively, that the district court erred by failing to instruct the jury on issues of objective and normative entrapment. We affirm.

**BACKGROUND**

{2}    Defendant was convicted of trafficking a controlled substance, methamphetamine. He sold the drug to an undercover police officer in a controlled buy that had been arranged by a CI. The transaction took place at the CI's trailer; Defendant, the undercover police officer, the CI, and a woman who Defendant believed to be the CI's girlfriend, were present.

{3}    Defendant filed a motion to dismiss based on entrapment and/or outrageous government conduct. At the hearing on the motion, Defendant testified that the CI and the CI's girlfriend were his neighbors and that they sometimes consumed drugs together. The girlfriend had called him on his cell phone four or five times to ask if

he would get methamphetamine for a friend, but he told her that he was trying to stay away from drugs. He delivered the methamphetamine to the undercover police officer because the CI's girlfriend offered to have sex with him. Defendant further testified that he was a drug user and had recently completed rehabilitation. He denied that he regularly sold or delivered drugs.

{4}     The undercover police officer testified that another police officer had worked with the CI on the transaction and instructed the undercover police officer to meet with the CI. He did not know the type of instructions the other officer had given the CI. He testified that, when he arrived at the trailer, the CI and the girlfriend were present. Defendant arrived and introduced himself to the undercover police officer. He asked the CI for a scale, and the undercover police officer provided one. Defendant asked for a spoon, which the CI provided. Defendant weighed a gram of methamphetamine, telling the undercover police officer that his scale was "off." Defendant handed the methamphetamine that he had weighed to the undercover police officer in exchange for $80.

{5}     The other police officer testified that he had set up the controlled buy. He knew of Defendant's drug involvement, but he did not did not know that Defendant had participated in rehabilitation. He had developed the CI as an informant and believed that the CI had a girlfriend, although he did not know her and had not had contact with

3

her. He knew that she was present at the transaction but did not believe that she interfered in any way. This officer testified that he does not instruct confidential informants how to arrange transactions and explains to informants "don't make them do something they don't normally do." He never discussed offering sex as part of a transaction with a confidential informant. He had the CI sign an "entrapment form," but that his agreement with the CI would not have an affect on the girlfriend. When asked by defense counsel "Does that form instruct the [CI] that his . . . say if the [CI] has a wife or girlfriend, are they likewise bound by these entrapment forms?" the officer answered "No it does not . . . My concern is on the [CI]." The officer did not believe, however, that the girlfriend played an active role in setting up Defendant. When asked by the State "Did you have any knowledge about her activity or interference or anything that led you to think that she was interfering in any way?" he answered "No."

{6}     The district court denied Defendant's motion to dismiss. Defendant filed a notice of intent to raise entrapment as a defense at trial. Indeed, entrapment was the only issue at trial because Defendant admitted that he had committed the crime.

{7}     The testimony concerning entrapment at trial was similar to that at the hearing on the motion to dismiss. The undercover police officer testified to the transaction. He met the CI when he arrived at the trailer, and a woman was present. She suggested that

4

he represent himself as her cousin. Defendant asked for a scale and a spoon. He weighed a gram of methamphetamine and placed it in a plastic baggie, keeping the remaining methamphetamine. He told the officer that his scale was "off." He exchanged the baggie for $80. The officer observed that Defendant did not seem to be unwilling or hesitant in the transaction. When asked if Defendant seemed nervous, the officer responded "He did seem a little bit nervous meeting me; however, when it came time to the actual transaction, there was no hesitation on his part." He did not know the practices regarding preparing confidential informants, although he knew that there was a "packet"of information. He did not know what the other police officer reviewed with the CI.

{8} Defendant testified that he had done drugs with both the CI and his girlfriend previously and that they did not know that he had spent time in rehabilitation. On cross-examination, he agreed that it would have been reasonable for them to believe that he would have drugs based on their history with him. He testified that the girlfriend called him four or five times the day before the controlled buy asking him for methamphetamine. He told her that he was not where there were drugs. She called again the day of the controlled buy and twice offered him sex if he obtained methamphetamine for a friend. Defendant testified that "She offered me sexual

pleasures if I can help her get some meth for her friend." He further testified that he did so and "gave in to her" because of her offer of sex.

**FORMS OF ENTRAPMENT**

{9}    Our case law creates two forms of entrapment in New Mexico—subjective and objective. *State v. Vallejos*, 1997-NMSC-040, ¶ 10, 123 N.M. 739, 945 P.2d 957. Subjective entrapment involves circumstances in which officials of government originate the criminal design and implant the disposition to commit the alleged offense in the mind of an innocent person and induce the commission of the crime in order to permit prosecution. *Id.* ¶ 5. It is not at issue in this appeal.

{10}    Objective entrapment can occur in two separate ways, factual and normative. *See id.* ¶¶ 10-11, 16. Under the factual inquiry, the factfinder must find "as a matter of fact that police conduct created a substantial risk that an ordinary person not predisposed to commit a particular crime would have been caused to commit the crime[.]" *Id.* ¶ 11. Under the normative inquiry, the trial court must determine "as a matter of law that police conduct exceeded the standards of proper investigation[.]" *Id.* Police conduct would not pass the normative inquiry if it "offend[s] our notions of fundamental fairness," or if it is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a

6

conviction[.]" *Id.* ¶ 16 (internal quotation marks and citations omitted). Both factual and normative entrapment require dismissal of the charges brought against the defendant. *Id.* ¶ 11. Defendant raises issues concerning both forms of objective entrapment, factual and normative, in this appeal.

**MOTION TO DISMISS**

{11}     Defendant first argues that the district court erred by failing to grant his motion to dismiss because the use of the CI's girlfriend in the controlled buy constituted normative entrapment as a matter of law. Because this issue raises a "matter of law," we afford it de novo review to the extent that the facts are not disputed. *State v. Shirley*, 2007-NMCA-137, ¶ 18, 142 N.M. 765, 170 P.3d 1003. With regard to disputed facts, we defer to the district court's findings of fact that are supported by substantial evidence. *Id.* In addressing the district court's analysis of facts, however, we must not lose sight of the fact that, in a case to be tried before a jury, to the extent that disputed facts are material to the normative inquiry, they are best assigned to the jury to resolve. *See Vallejos*, 1997-NMSC-040, ¶ 20 ("While the normative inquiry is most appropriately conducted by the court, the jury may resolve factual disputes where credibility is an issue or where there is conflicting evidence pertaining to what events transpired.").

{12} The district court denied the motion to dismiss. With regard to its normative inquiry, the district court held that it could not, as a matter of law, conclude that there was objective entrapment from the facts presented. As to the argument that the transaction was motivated by a promise of sexual favors, the district court stated that it did not think that there was case law that such action would "always" constitute objective entrapment as a matter of law. The district court then noted that "under the right circumstances," a promise of sexual favors is "just the chosen medium of exchange, it's no different than a transaction of cash."

{13} Defendant focuses his normative entrapment argument on the district court's "medium of exchange" language, contending that it is unconscionable under societal standards for the government to use the CI's girlfriend as an "undercover agent" as a "sexual commodity" or "medium of exchange." Defendant's argument misses the mark for two reasons.

{14} First, as we have discussed, the district court's normative inquiry is one that is a matter of law. The district court addressed the law and determined that the law did not support a conclusion that the exchange of drugs for sexual favors would "always" amount to unconscionable activity. The district court specifically stated that it could not find normative entrapment on the basis of the evidence that was presented at the hearing on the motion to dismiss. That evidence did not include a basis for the district

court to conclude, as a matter of law, that the CI's girlfriend was acting in any manner as an "undercover agent" as Defendant contends. Indeed, the officer who set up the controlled buy testified that although he knew that the CI had a girlfriend, he did not know her and had not had contact with her. Normative entrapment applies when "police conduct" offends our notion of fundamental fairness or is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction[.]" *Id.* ¶ 16 (internal quotation marks and citation omitted). Unless the evidence conclusively indicated that the CI's girlfriend acted as a result of police conduct, the district court could not decide as a matter of law that her conduct gave rise to normative entrapment.

**{15}** Second, the district court also did not err by denying the motion to dismiss, which depended on Defendant's uncorroborated testimony that the CI's girlfriend offered him sexual favors. In response to Defendant's testimony, the State argued at the hearing that Defendant was a ready, willing, and able participant in the controlled buy and did not produce any evidence to corroborate his testimony regarding the CI's girlfriend's actions, such as his cell phone or phone records. As a consequence, Defendant's credibility was an issue to be assessed in connection with the substance of his motion to dismiss. As we have discussed, in a normative entrapment analysis, credibility is typically a question for the jury. *Id.* ¶ 20.

**{16}** We specifically addressed the issue of a defendant's credibility in the normative entrapment context in *Shirley* in which we determined that the district court had appropriately denied a motion to dismiss because there was both conflicting evidence and credibility concerns. 2007-NMCA-137, ¶ 21. The defendant testified in that case that the confidential informant in connection with a controlled buy acted in a manner that established a prima facie case of entrapment. *Id.* ¶¶ 10, 20. Her testimony conflicted in certain respects with that of the undercover officer who participated in a controlled buy. *Id.* ¶¶ 11-12, 22-23. The defendant's testimony was also not consistent. *Id.* ¶ 24. We stated that a jury had the discretion to disbelieve the defendant's uncorroborated testimony and, in affirming the denial of the motion to dismiss, stated that "[w]here a defendant's claim of entrapment is uncorroborated, the question of [the d]efendant's credibility is best left to the jury to decide." *Id.* ¶¶ 29-30.

**{17}** The same is true in this case. In a normative entrapment analysis, credibility is typically a question for the jury. *Id.*; *Vallejos*, 1997-NMSC-040, ¶ 20.

**JURY INSTRUCTIONS**

**{18}** Defendant tendered two jury instructions pertaining to objective entrapment based on UJI 14-5160 NMRA and UJI 14-5161 NMRA. The district court gave the UJI 14-5160 instruction and refused the UJI 14-5161 instruction.

**{19}** The UJI 14-5160 instruction provided:

Evidence has been presented that Jeffrey Axtolis was the subject of unfair inducement. Unfair inducement occurs when agents of law enforcement unfairly cause the commission of a crime. "Government agents" include law enforcement officers or persons acting under their direction, influence or control.

When a defendant is not ready and willing to commit the crime of trafficking a controlled substance before being first contacted by a government agent, but is induced or persuaded to commit the crime by a government agent, the defendant is a victim of unfair inducement. However, where a defendant is ready and willing to commit the crime at the time of first contact with a government agent, the mere fact that the government agent provides what appears to be an opportunity to commit the crime is not unfair inducement.

The burden is on the [S]tate to prove to your satisfaction beyond a reasonable doubt that [D]efendant was not unfairly induced. If you have a reasonable doubt as to whether [D]efendant was unfairly induced, you must find [D]efendant not guilty.

{20} The UJI 14-5161 instruction that was refused read:

Evidence has been presented that government agents exceeded the bounds of permissible law enforcement conduct. Permissible law enforcement conduct is exceeded if government agents: Engaged in conduct which creates a substantial risk that an ordinary person would commit the crime of trafficking a controlled substance.

{21} While Defendant's requested UJI 14-5160 instruction followed the language of the standard instruction, his requested instruction under UJI 14-5161 modified the standard instruction by deleting portions of the suggested language including a description of the unconscionable method or illegitimate purpose at issue. *See* UJI 14-

11

5161 (including bracketed language in which to "describe unconscionable method or illegitimate purpose").

{22}     Defendant argues on appeal that the district court erred by not giving the UJI 14-5161 instruction and by not modifying Defendant's tendered instruction to present the issue of normative entrapment to the jury. We review the district court's refusal of a jury instruction as a mixed question of law and fact and afford it de novo review. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167. The district court must give an instruction on the defendant's theory of the case if there has been sufficient evidence presented "to allow reasonable minds to differ as to all elements of the offense." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted). "[W]e view the evidence in the light most favorable to the giving of [a defendant's] requested instruction." *Id.* (alteration, internal quotation marks, and citation omitted).

{23}     The district court refused the UJI 14-5161 instruction because it depended on the police officers exceeding the bounds of permissible law enforcement conduct, and the district court concluded that there was no such excessive conduct as a matter of law. We may affirm a district court ruling if it is correct for a different reason provided that "affirmance is not unfair to the appellant." *Bd. of Cty. Comm'rs v. Chavez*, 2008-NMCA-028, ¶ 12, 143 N.M. 543, 178 P.3d 828 (internal quotation

marks and citation omitted). We do so in this instance because the issue as presented to the district court did not require the district court to expand upon Defendant's tendered instruction to rule as it did.

{24}     Rule 5-608(D) NMRA requires a party to tender a correct written instruction in order to preserve an objection for the failure of the court to instruct on an issue. Defendant tendered instructions based on UJI 14-5160 and UJI 14-5161. The UJI 14-5160 instruction concerned entrapment due to unfair inducement. It would have allowed the jury to acquit Defendant if the State failed to prove beyond a reasonable doubt that the police officers, or persons acting under their direction, influence, or control, induced or persuaded Defendant to commit the crime when he was not ready and willing to otherwise do so. The tendered instruction based on UJI 14-5161 was incomplete in that it did not describe the manner in which Defendant's tendered instruction based on UJI 14-5161 would have allowed the jury to acquit Defendant if it found that the police officers engaged in conduct exceeding the bounds of permissible law enforcement conduct by engaging in conduct that "creates a substantial risk that an ordinary person would commit the crime of trafficking a controlled substance." As it was tendered, it equated exceeding permissible law enforcement conduct with conduct that created a substantial risk that an ordinary person would have committed the crime.

13

{25} Thus, the two tendered instructions were similar. Indeed, during the jury instruction conference, defense counsel stated that "in terms of the facts of this case, I cannot say that one or the other of these is the proper instruction to be given." He further stated that the instruction based on UJI 14-5160 "may be more detailed," but he asked the district court to give both instructions "out of an abundance of caution" because an appellate court may deem them necessary. He agreed with the prosecutor's observation that there did not seem to be much of a distinction between the two instructions under the facts of this case. As Defendant presented the issue with his tendered instructions, the district court could correctly have refused the instruction based on UJI 14-5161.

{26} The district court read more into Defendant's tendered UJI 14-5161 instruction and ruled that it would not give the instruction even based on a theory that the CI's girlfriend was acting under the direction, influence, or control of the police officers in offering Defendant sex on two occasions in exchange for the sale of the drugs because such conduct would not be impermissible law enforcement conduct based on the facts of this case as a matter of law. This ruling unnecessarily expanded upon Defendant's tendered UJI 14-5161 instruction and the arguments Defendant made in the district court.

{27} On appeal, Defendant argues that the district court erred by not re-writing Defendant's tendered UJI 14-5161 instruction to include Defendant's expanded factual theory and by not giving the re-written instruction to the jury. We agree with Defendant that a flawed tendered instruction may be sufficient to alert the district court to the issue requiring a jury instruction and to preserve the issue for appellate review. *See State v. Jernigan*, 2006-NMSC-003, ¶ 10, 139 N.M. 1, 127 P.3d 537 ("[I]f the record reflects that the judge clearly understood the type of instruction the [d]efendant wanted and understood the tendered instruction needed to be modified to correctly state the law, then the issue is deemed preserved for appellate review."); *State v. Hill*, 2001-NMCA-094, ¶ 7, 131 N.M. 195, 34 P.3d 139 (stating that the purpose of the rule requiring the tender of a correct instruction "is to alert the trial court to the defendant's argument"). We further agree with Defendant that the trial court may correct misstatements of law contained in a tendered instruction and give the corrected instruction to the jury. *State v. Skippings*, 2011-NMSC-021, ¶ 27, 150 N.M. 216, 258 P.3d 1008; *Jernigan*, 2006-NMSC-003, ¶ 10.

{28} However, this case is different in that Defendant did not espouse a theory under UJI 14-5161 either in his tendered instruction or in his argument to the district court. Most significantly, his argument admitted the similarity of his two tendered instructions, and he did not assert that he was asserting a different theory with his

15

tendered UJI 14-5161 instruction. Nor did defense counsel refer to such a theory during his opening statement in which defense counsel only stated that he anticipated that the jury would receive an instruction on "entrapment or improper inducement." We thus agree with the district court that Defendant was not entitled to his tendered UJI 14-5161 instruction, although for a different reason.

{29}     We therefore do not reach the merits of the district court's reasoning in refusing the UJI 14-5161 instruction. For the reasons we have stated, we affirm the district court's refusal.

**CONCLUSION**

{30}     We affirm Defendant's conviction.

{31}     **IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**J. MILES HANISEE, Judge**

16